PROFESSIONAL INSURANCE AGENTS OF WASHINGTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Professional Ins. Agents v. Commissioner
Docket No. 8949-83.
United States Tax Court
T.C. Memo 1987-68; 1987 Tax Ct. Memo LEXIS 64; 53 T.C.M. (CCH) 9; T.C.M. (RIA) 87068; February 3, 1987. George A. Simpson and George J. Rabil, for the petitioner. Cynthia J. Mattson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Taxable Year Ended
Deficiency
September 30, 1978
$2,983
September 30, 1979
$2,250
After concessions, the sole issue for decision is whether insurance administrative fees received by petitioner, a business league of insurance agents exempt from taxation pursuant to section 501(c)(6), [1] constitute unrelated business taxable income under section 512. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Professional Insurance Agents of Washington (hereinafter referred to as "PIAW" or "petitioner") was originally incorporated *66 in 1974 under the laws of Washington and has its principal office in Tacoma, Washington. During the years in issue, petitioner's books were maintained on a cash basis and it reported its income and expenses on a fiscal year basis. Petitioner is an organization which is exempt from Federal income taxation under section 501(c)(6). Petitioner's membership is comprised exclusively of independent insurance agents. Petitioner had approximately 550-600 members during the years in issue. Virtually all of the independent insurance agents which constituted petitioner's membership operated on a relatively small scale. About 50 percent of the members consisted of one-person producing agencies. The remainder of petitioner's membership consisted of two and three person producer insurance agencies. Upon becoming a member of petitioner's organization, an independent insurance agent automatically became a member of the National Association of Professional Insurance Agents (hereafter "The National Association"). Independent insurance agents operate under the "American Agency System." This essentially means that insurance premiums are produced by independent insurance agents operating solely *67 on a commission basis on their own account and as independent contractors who maintain their own offices separate from any insurance company. These agents may represent a number of different insurance carriers. By way of contract, a company agent sells insurance policies for one company or a related group of companies and is often an employee of one of the companies. Petitioner is composed entirely of independent insurance agents as distinguished from company agents. Petitioner's purposes as set forth in its articles of incorporation and by-laws are, generally, as follows: A. To study the needs of its members and to promote the general welfare of the Association; B. To acquire a more thorough understanding of the insurance needs of the public in general; C. To establish and maintain a close and friendly relationship between the members of the Association and the companies for which they write business; and D.To promote the "American Agency System" of independent insurance agents. Errors and Omission insurance coverage (hereinafter "E & O") is essentially malpractice coverage for insurance professionals. It provides protection from liability claims arising out of *68 errors and omissions in the writing and processing of insurance policies. This coverage includes protection against liability arising due to the erroneous draftsmanship of contracts and policies, unintentional misrepresentations and erroneous cancellations. E & O coverage was made available to members of the Washington Association by the National Association through policies underwritten by the Utica Mutual Insurance Group. The National Association received a percentage of the premiums paid from the insurance company offering the E & O coverage. In turn, the National Association paid 8/15ths of the premiums it received to petitioner. The money derived from the National Association's E & O program was received by petitioner on a monthly basis. Petitioner and the National Association were separate and independent entities during the years in issue. In addition, petitioner operated separately and independently of the 49 other state associations. Petitioner received funds from the National Association in connection with several insurance plans in addition to the E & O coverage (e.g., health, life, and accident group insurance) during the years in issue.In the notice of deficiency, *69 respondent determined that petitioner received "Insurance Administrative Fee Income" in the total amounts (for all types of insurance) of $26,882 and $29,780, for the fiscal years ended September 30, 1978 and September 30, 1979, respectively. Petitioner received funds from the National Association in connection with the E & O program during its fiscal years ended September 30, 1978, and September 30, 1979, in the amounts of $21,760 and $24,693, respectively. Petitioner's expenses attributable to its involvement with the E & O coverage, for the fiscal years September 30, 1978 and September 30, 1979, were $9,896 and $14,981, respectively. Petitioner did not contest respondent's determination that the amounts it received with regard to the various other insurance plans constituted taxable unrelated business income. Although petitioner did not have a written contractual relationship with the National Association or any insurance company with respect to E & O insurance, petitioner has been receiving insurance fees from the National Association since 1956. Approximately 95 percent of petitioner's members had E & O coverage and approximately 80 percent of these members obtained their *70 E & O coverage through petitioner. Petitioner was never licensed to sell insurance or to act as an insurance broker in the State of Washington. Petitioner provided E & O insurance applications to any members or non-members who requested them. Petitioner included information concerning the National Association's E & O insurance program in its membership information packages. In this regard, petitioner provided brochures, rate information, and applications to member and non-member independent insurance agents in the State of Washington, and attempted to answer inquiries concerning the National Association's E & O coverage. If a particular question could not be answered, petitioner would give the inquiring individual a toll free telephone number to call. Insurance agents would occasionally call petitioner's office with complaints about their E & O coverage, in which case they would also be given the toll free number to call. The expenses incurred by petitioner with respect to the promoting of various National Association insurance plans, including E & O insurance, were a significant portion of petitioner's total operational expenses. In addition, petitioner's accountant estimated *71 that Arline Baker, petitioner's Executive Director, devoted 20 hours of her time each month to the "generation of Insurance Administration Fee and Finance Plan income." Petitioner mailed a monthly newsletter called "Evergreen Events" to its members. One of the newsletters, dated September 1978, contained an article stating that the E & O coverage offered through the National Association was one of its most important membership services. In another of its Evergreen Events monthly newsletters, dated March 1980, petitioner warned that E & O plans in competition with the National Association's plan were not as stable; it urged Washington State insurance agents to "Stick With Us," pointing out the advantages of the National Association's plan. OPINION After concessions, the issue remaining for decision is whether the fees received by petitioner in connection with the E & O insurance program constituted unrelated business taxable income as defined by sections 512 and 513. The same E & O insurance program sponsored by the National Association was previously reviewed carefully by this Court in *72 Professional Insurance Agents of Michigan v. Commissioner,78 T.C. 246 (1982), affd. 726 F.2d 1097 (6th Cir. 1984). [2] Our decision in that case is controlling here notwithstanding petitioner's attempts to factually distinguish it. Petitioner qualified as a tax-exempt business league under section 501(c)(6). A business league, however, may still be liable for tax pursuant to section 511 to the extent that it has unrelated business taxable income (UBTI). Section 1.513-1(a), Income Tax Regs., provides that, in general, gross income must be included in the computation of UBTI if three criteria are satisfied: (1) the income is derived from a trade or business; (2) the trade or business is regularly carried on by the organization; and (3) the conduct of the trade or business bears no substantial relation (other than through the production of funds) to the organization's exempt purpose. A. Trade or Business
Section 1.513-1(b), Income Tax Regs., provides that, as *73 a general rule, an activity which qualifies as a trade or business under section 162 will fall within the scope of section 513. During the years in issue, petitioner endorsed or promoted E & O insurance underwritten by Utica Mutual Insurance Group and made available through the National Association. The National Association is a national organization of insurance agents whose membership is comprised of members of the various state associations. In return for its endorsement of their product and additional promotional activities, the National Association received a fee in the form of a percentage of the premiums paid to Utica Mutual. Petitioner, in turn, received a share of these revenues (8 percent of the premiums paid by its members) to reflect its promotion of the program on a local basis. Petitioner's efforts in this regard consisted of including descriptive brochures, rate schedules, and applications in its mailings to new and prospective members, answering inquiries concerning the program, and promoting the E & O insurance at various educational seminars and in petitioner's official monthly magazine. [3] We conclude from the record as a whole that petitioner's participation *74 in these promotional efforts was critical to the success of the program and that the payments were compensatory in nature. [4]
In the case of a corporate taxpayer, the determinative factor in resolving the trade or business issue is whether the activity was engaged in with the intent to make a profit. *75 Professional Insurance Agents of Michigan v. Commissioner,supra at 262; Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,801 F. 2d 987 (7th Cir. 1986), affg. a Memorandum Opinion of this Court. We think this requirement is clearly satisfied in the instant case. Petitioner's promotional activities produced revenues that were significantly in excess of the related expenses. Other than Mrs. Arline Baker's self-serving testimony, there is simply no evidence to infer that the monies received by petitioner were other than in exchange for the services rendered by petitioner in connection with the marketing of the National Association's E & O insurance plan. Furthermore, we simply do not believe that petitioner would have continued to incur thousands of dollars in promotional expenses each year if the National Association ceased its commission remittance arrangement. As in the Michigan and Illinois cases, petitioner's activities with regard to the E & O insurance program were highly profitable and the fees generated far exceeded the related expenses. [5] We therefore find that petitioner's activities with respect *76 to the E & O insurance program qualified as a trade or business under section 1.513-1(c), Income Tax Regs., and section 162. [6]
B. Regularly *77 Carried On
The second requirement which must be met in order for petitioner's insurance fees to constitute unrelated business taxable income is that the trade or business be "regularly carried on." Section 1.513-1(a), Income Tax Regs. Petitioner presented no evidence that its trade or business was not regularly carried on and therefore, it has failed to sustain its burden of proof with regard to that test. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [7]
C. Not Substantially Related
The third and final requirement which must be satisfied in order for the UBTI tax to be imposed is that the conduct of the trade or business must not be "substantially related" to the exempt purpose or function of the taxpayer-organization, Section 1.513-1(a), Income Tax Regs. Sections 1.513-1(d)(2), Income Tax Regs., defines the meaning of "substantially related" as follows: (2) Type of relationship required. Trade or business is "related" to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship *78 to the achievement of exempt purposes (other than through the production of income); and it is "substantially related," for purposes of section 513, only if the causal relationship is a substantial one. Thus, for the conduct of trade or business from which a particular amount of gross income is derived to be substantially related to purposes for which exemption is granted, the production or distribution of the goods or the performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes. Where the production or distribution of the goods or the performance of the services does not contribute importantly to the accomplishment of the exempt purposes of an organization, the income from the sale of the goods or the performance of the services does not derive from the conduct of related trade or business. Whether activities productive of gross income contribute importantly to the accomplishment of any purpose for which an organization is granted exemption depends in each case upon the facts and circumstances involved. Thus, in order for the fees produced by petitioner's insurance activities to escape BUTI treatment, *79 petitioner's activities must "contribute directly and importantly to the accomplishment of one or more of its exempt purposes," Professional Insurance Agents of Michigan v. Commissioner,78 T.C. at 266. An organization qualifies as an exempt business league if its members consist of "persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit." Section 1.501(c)(6)-1, Income Tax Regs. Petitioner's purposes as set forth in its articles of incorporation and by-laws are generally to promote the "American Agency System" of independent insurance agents, to acquire a better understanding of the insurance needs of the public, and to further the business of independent insurance agents. [8] The "American Agency System" consists of independent insurance agents operating solely on a commission basis. *80 We must therefore decide whether petitioner's activities with regard to the E & O insurance program contributed substantially to the advancement of the common business interests of independent insurance agents. The fact that petitioner's members benefited by being able to participate in the E & O insurance program is not alone sufficient to establish the necessary "relatedness" with regard to a business league. Professional Insurance Agents of Michigan v. Commissioner,supra at 268. Petitioner bears the burden of proving that the activities in question contributed directly and importantly to the common interests of independent insurance agents. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Although the insurance consumer ultimately realizes a benefit by virtue of the protection afforded by E & O insurance, such a benefit is clearly ancillary to the primary purpose of the program which involves insulating the agent from personal liability resulting from errors committed in the drafting and negotiation of insurance contracts and policies. In order for the substantial relatedness requirement to be satisfied, any direct benefits flowing *81 from petitioner's activities must inure to its members in their capacities as members of the organization. Professional Insurance Agents of Michigan v. Commissioner,supra;Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,supra.
When the activities of a business league are directed toward the achievement of the common business interest of its members, the benefits that accrue to its members are inherently group benefits. A product or service that seeks to accomplish a truly tax exempt purpose does not assure the member that he will receive benefits directly proportional to the fees he pays. For instance * * * [a] member attending PIA - sponsored seminars might receive far more or less than he paid for. The insurance at issue here, however, was strictly a quid pro quo proposition. * * * [Professional Insurance Agents of Michigan v. Commissioner,supra at 1104.] In the instant case, petitioner's members received an insurance benefit that was directly and exactly proportional to the premiums he paid. Indeed, petitioner has failed to show any direct benefit to the common interests of its membership as a whole. *82 Professional Insurance Agents of Michigan v. Commissioner,supra;Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,supra.Petitioner's activities with regard to the E & O insurance program did little more than generate revenue for the association and provide members with a convenient and economical service in the operation of their agencies, Professional Insurance Agents of Michigan,supra;Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,supra.We therefore hold that petitioner's trade or business of promoting the E & O insurance program was not substantially related to its exempt purpose. [9]
*83 In conclusion, we find that the income from petitioner's insurance activities was derived from a regularly carried on trade or business bearing no substantial relationship to petitioner's exempt purposes. Therefore, such income, less allowable deductions, is subject to the tax imposed by section 511(a). [10]
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. See also Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,T.C. Memo. 1985-105, affd. 801 F. 2d 987↩ (7th Cir. 1986).
3. In Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,supra,↩ only insurance agents who were members of petitioner's organization could obtain E & O insurance through petitioner's program. By contrast, in the instant case, the E & O insurance was made available to members and non-members alike. We do not find this distinction to be of significance in the present context. 4. The fact that petitioner had no contractual right to receive insurance commissions from the National Association does not negate the compensatory nature of the fees in issue. We note that in the Michigan case there was no contractual agreement with the National Association. Professional Insurance Agents of Michigan v. Commissioner,78 T.C. 246 (1982), affd. 726 F.2d 1097↩ (6th Cir. 1984).
5. Prior to the taxable years at issue in the Michigan↩ case, the Michigan Association's group insurance plans, including the E & O coverage, were carried on by a for-profit-corporation, a wholly owned subsidiary of the Michigan Association. However, for the taxable year before the Court, all of the insurance programs had been shifted from the for-profit-corporation to the Michigan tax-exempt business league. The fact that petitioner in the instant case has at no time controlled or owned a for-profit-corporation is of no significance in determining whether PIAW's promotional activities were engaged in with the intent to earn a profit. 6. We also note that petitioner's promotion of the insurance program could potentially disadvantage others seeking to compete with the National Association's E & O insurance program. We do not, however, rely on this factor for our holding that petitioner's E & O program constitutes a trade or business. See Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,supra.↩
7. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
8. We note that these are the same basic purposes of the exempt associations involved in the Michigan and Illinois↩ cases. In those cases, this Court held that the taxpayer's E & O activities were not substantially related to the association's exempt purposes.
9. Petitioner claims that it attempted to educate independent insurance agents, both member and non-members alike, to the broad benefits of E & O insurance coverage. According to petitioner, its activities were not simply related to the promotion of the E & O program sponsored by the National Association, but that it provided objective educational information concerning the benefits of E & O coverage in general. From the record, however, it is clear that petitioner was compensated solely for its promotional activities regarding the National Association's E & O coverage and not for any ancillary activities involving educating independent insurance agents in the State of Washington as to the attributes of E & O insurance coverage.↩
10. We note that the Michigan case involved other insurance programs in addition to the E & O coverage. We do not believe that this factor is of significance in distinguishing that case from the instant case. See Illinois Association of Professional Insurance Agents, Inc. v. Commissioner,T.C. Memo. 1985-105, where this Court held that fees received by the Illinois Association in exchange for its performance of various services in connection with the same E & O program at issue in the instant case constituted UBTI. See also the Illinois↩ case where performance of various services in connection with the same E & O program at issue in the instant case constituted UBTI.